BG LAW LLP
Steven T. Gubner
Nevada Bar No. 4624
Email: sgubner@bg.law
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101
(702) 835-0800
(866) 995-0215 Fax

WHITEFORD TAYLOR & PRESTON, LLP
Paul M. Nussbaum (*pro hac vice* to be filed)
Christopher A. Jones (admitted *pro hac vice*)
Email: pnussbaum@whitefordlaw.com
Email: cajones@whitefordlaw.com
7 Saint Paul Street
Baltimore, MD 21202
(410) 347-8700
(410) 223-4394 Fax

*Counsel for Defendant South River Capital, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: BK-22-14616-NMC |
| ROBIN AND DONYA LEHNER, | Chapter 7 |
| Debtors. | |

| | |
|---|---|
| POSHBABY, LLC | Adv. Case No. _____ |
| Plaintiff, | [District Court Case No.: A-24-908421-C] |
| v. | **SOUTH RIVER CAPITAL LLC'S NOTICE OF REMOVAL** |
| SOUTH RIVER CAPITAL LLC and DOES I – X, inclusive | |
| Defendants. | |

Pursuant to 28 U.S.C. §§ 1334(b) and 1452, and Rule 9027 of the Federal Rules of Bankruptcy Procedure, Defendant South River Capital, LLC ("SRC" or "Defendant"), by its undersigned counsel, hereby removes to this Court the action filed in the Eighth Judicial District Court, Clark County, Nevada captioned  *Poshbaby, LLC v. South River Capital, LLC and Does I – X, inclusive*, Case No.: A-24-908421-C (the "State Court Action") and in support thereof, states as follows:

///

**The State Court Action and Bankruptcy Case**

1. On December 30, 2022, Robin and Donya Lehner commenced a voluntary case under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Case").

2. The State Court Action was commenced on December 18, 2024 and served on January 4, 2025. A copy of the *Complaint* ("State Court Complaint") is attached as Exhibit 1.

3. The other pleadings filed in the State Court action are the following:

    a. Lis Pendens (attached as Exhibit 2);

    b. Initial Appearance Fee Disclosure (attached as Exhibit 3); and

    c. Summons (attached as Exhibit 4).

**Entitlement to Removal**

4. Pursuant to 28 U.S.C. § 1452(a), Defendant "may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of [Title 28]." 28 U.S.C. § 1334(b) in turn confers subject matter jurisdiction to the federal district courts over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id*. The State Court Action is pending in the Eighth Judicial District Court, Clark County, Nevada. The District Court of Nevada is the district court for that area.

5. The State Court Action and the claims contained in the State Court Complaint are core matters in that they relate to the Bankruptcy Case as they directly implicate and relate to an adversary proceeding (the "Adversary Proceeding") filed by Robert Atkinson, chapter 7 Trustee (the "Trustee"), a copy of the Trustee's *Second Amended Adversary Complaint* filed in the Adversary Proceeding is attached hereto as Exhibit 5, and a settlement of that Adversary Proceeding that the Bankruptcy Court approved (the "Settlement"). *See Order Granting Motion to Approve Settlement Agreement Pursuant to FRBP 9019,* ECF 548 (the "Settlement Order"). A copy of the *Settlement Order* is attached hereto as Exhibit 6.

///

///

2

6.      Specifically, the State Court Action seeks to prosecute claims and causes of action that were or could have been litigated in the Adversary Proceeding.  For example, in the Adversary Proceeding, the Trustee included a claim for unjust enrichment.  *Second Amended Complaint*, p. 9.  The State Court Complaint contains a similar count based on similar facts.  *State Court Complaint*, p. 9.

7.      Moreover, the State Court Action seeks to scuttle the Settlement by specifically attacking various terms and provisions in the Settlement Order and the Settlement Agreement attached thereto.  The Bankruptcy Court's involvement is required to preserve the sanctity of the Settlement.  In fact, the Bankruptcy Court specifically "retain[ed] continuing and exclusive jurisdiction to the maximum possible extent to interpret, implement, and enforce this Order and all matters arising from or related to its implementation" in the Order approving the Settlement.  *Settlement Order*, p. 3.  Thus, the Bankruptcy Court has core jurisdiction to hear the State Court Action.

**SRC Has Satisfied All Procedural Requirements**

8.      Pursuant to Rule 9027(a)(1) of the Federal Rules of Bankruptcy Procedure, SRC consents to the entry of a final order or judgment by the Bankruptcy Court.

9.      Pursuant to Rule 9027(a)(1) of the Federal Rules of Bankruptcy Procedure, copies of all process and pleadings from the docket in the State Court Action as of the time of the filing of this Notice of Removal are attached.

10.      This Notice of Removal is timely under Rule 9027(a)(2) of the Federal Rules of Bankruptcy Procedure because it was filed within 30 days of SRC receiving the State Court Complaint.

11.      Pursuant to Rule 9027(b) of the Federal Rules of Bankruptcy Procedure, SRC will cause a copy of this Notice of Removal to be served upon counsel for all other parties to the State Court Action.

///

///

///

12.     Pursuant to Rule 9027(c) of the Federal Rules of Bankruptcy Procedure, SRC will cause a copy of this Notice of Removal to be filed with the Eighth Judicial District Court, Clark County, Nevada.

DATED this 8th day of January, 2025

Respectfully submitted,

/s/ *Steven T. Gubner*
Steven T. Gubner
Nevada Bar No. 6654
BG LAW LLP
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101
(702) 835-0800
(866) 995-0215 (Fax)
Email: sgubner@bglaw.com

WHITEFORD TAYLOR & PRESTON, LLP
Paul M. Nussbaum (*pro hac vice* to be filed)
Christopher A. Jones (admitted *pro hac vice*)
7 Saint Paul Street
Baltimore, MD 21202
(410) 347-8700
(410) 223-4394 Fax
Email: pnussbaum@whitefordlaw.com
Email: cajones@whitefordlaw.com

*Counsel for Defendant South River Capital, LLC*

4

# EXHIBIT 1

Exhibit 1

Electronically Filed
12/18/2024 2:22 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
Allison R. Schmidt
Nevada Bar No. 10743
NEVADA'S LAWYERS
7250 S. Durango Dr.
Suite 130-A295
Las Vegas, NV 89113
702.900.9040
*Attorney for Plaintiff,*
*Poshbaby, LLC*

CASE NO: A-24-908421-C
Department 6

## EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| POSHBABY, LLC, a Nevada Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>SOUTH RIVER CAPITAL, LLC a Maryland Limited Liability Company, and Does I-X, inclusive,<br><br>Defendants | Case No.:<br><br>Dept. No.:<br><br>**COMPLAINT**<br><br>**ARBITRATION EXEMPT:**<br>**(1) DECLARATORY RELIEF REQUESTED**<br>**(2) CONCERNS TITLE TO REAL PROPERTY** |

COMES NOW, Plaintiff, POSHBABY, LLC ("Poshbaby" or "Plaintiff) and hereby files this civil action for damages, equitable relief, and other relief in this Complaint against the above-named defendant as follows:

### JURISDICTION

52.     Jurisdiction is proper before this Court as this matter pertains title to the residential real property located in Clark County, Nevada commonly known as 9501 Balatta Canyon Court, Las Vegas, Nevada 89144, bearing Clark County Assessor's Parcel Number 138-30-712-014 (the "Property"), and more particularly described as:

LOT 22 IN BLOCK A OF CANYON FAIRWAYS, AS SHOWN
ON THE FINAL MAP OF SUMMERLIN VILLAGE 3 CUSTOM

Page 1 of 11

LOTS UNIT NO 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 74 OF PLATS, PAGE 36, AND AS AMENDED BY CERTIFICATE OF AMENDMENT RECORDED AUGUST 20, 1996 IN BOOK 960820 AS DOCUMENT NO 01210 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA

## PARTIES

53.     Plaintiff POSHBABY LLC ("Poshbaby") is a Nevada Limited Liability Company.

54.     Upon information and belief, defendant SOUTH RIVER CAPITAL, LLC ("SRC") is a Maryland Limited Liability Company.

55.     Upon information and belief, the defendants named fictitiously herein as DOE defendants are responsible for the acts described herein or otherwise liable to the Plaintiff, but their identities are presently unknown to Plaintiff. Plaintiff will seek leave to amend this complaint to name such defendants by their true names as they become known to Plaintiff.

## GENERAL ALLEGATIONS

56.     This case involves a hard money lender that committed a long series of violations of State and Federal Law, culminated in the manipulation of a foreclosure sale that took place on or about December 11, 2024.

57.     Not content to simply recover the amount due and owing to SRC under an improperly issued loan, SRC decided it wanted the entire property that secured the loan.

58.     SRC, not wanting to leave anything to chance, illegally inflated the amount claimed to be due an owing under the loan, such that the debt nearly doubled from $2.1 million to $3.7 million in a matter of days, to allow SRC to enter false "credit bids."

59.     SRC additionally bid illegally, using the foreclosure Trustee – which is required under Nevada law to act impartially – as its proxy.

60.     SRC is a hard-money lender which gives unconventional or hard money loans to professional athletes.

61.     SRC claims it offers funding when "a traditional bank just can't give you what you're looking for." *See* https://www.southrivercapital.com.

62.     Additionally, SRC claims it can lend to individuals who "[w]ere turned down by a

traditional bank or don't meet traditional bank underwriting guidelines." *Id.*

63.    James Plack is the CEO and founder of SRC.

64.    Upon information and belief, in 2015, the Office of the Comptroller of Currency ("OCC") brought suit against Plack seeking to ban him from the lending industry. *See e.g.* http://www.wsj.com/articles/regulator-opens-case-seeking-to-bar-maryland-bank-ceo-from-industry-1450210283

65.    Upon information and belief, as a result of the enforcement actions by the OCC, Place agreed to the entry of a consent order against him, in which Plack agreed to not be involved with any lending institution regulated by the OCC – essentially banning Plack from the lending industry. *See* **Exhibit A**.

66.    Undaunted, Plack founded SRC, a hard-money lending company that is unregulated by federal agencies like the OCC.

67.    Nonparty Robin Lehner is a professional hockey player for the Las Vegas Golden Knights, and was near bankruptcy when SRC issued the loan secured by Lehner's home.

68.    The Lehners, through their entity, Westridge Property Management, LLC ("Westridge"), purchased the Property by way of a Grant, Bargain, and Sale Deed recorded on November 18, 2020, as Clark County Recorder's Instrument Number 20201119-0001305.

69.    The Property was Lehner's primary residence.

70.    On or about April 5, 2022, the Lehners, through Westridge, entered into that certain Commercial Promissory Note (hereinafter, the "Note") and Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing (hereinafter, the "DOT").

71.    The DOT was recorded on April 8, 2022, as Clark County Recorder's Instrument Number 20220408-0001328. SRC is named as the beneficiary under the DOT and is named as the lender under the Note.

72.    The DOT recorded against the Property's parcel number purports to secure payment of the amounts alleged to be owed under the Note.

73.    SRC has no other recorded interest in the Property.

74.    On or about November 21, 2022, the Lehners, who were deep in debt when they

1   (through Westridge) obtained the SRC loan were forced to obtain alternate financing in order to

2   made a payment to SRC on the Note in the amount of $650,000.00, reducing the amount owed

3   under the note by approximately 20% to slightly over $2,000,000.

4        75.    Federal law requires that "no creditor may make a residential mortgage loan unless

5   the creditor makes a reasonable and good faith determination based on verified and documented

6   information that, at the time the loan is consummated, the consumer has a reasonable ability to

7   repay the loan, according to its terms, and all applicable taxes, insurance (including mortgage

8   guarantee insurance), and assessments."

9        76.    Upon information and belief, no such inquiry was made, as it would have revealed

10  that the Lehners were nearly $50,000,000 in debt at the time the loan was issued.

11       77.    NRS 645B.0127 defines the term "Mortgage Company" as a person who directly

12  or indirectly "holds himself or herself out as being able to make loans secured by liens on real

13  property."

14       78.    Pursuant to NRS 645B.900, "[i]t is unlawful for any person to offer or provide any

15  of the services of a mortgage company or mortgage loan originator or otherwise to engage in, carry

16  on or hold himself or herself out as engaging in or carrying on the business of a mortgage company

17  or mortgage loan originator without first obtaining the applicable license issued pursuant to [NRS

18  645B]" unless the person meets certain criteria for exemption.

19       79.    SRC does not now hold, nor has it ever held, a license to act as a mortgage company

20  in Nevada.

21       80.    Indeed, despite conducting business in the State of Nevada, SRC has not even

22  obtained a business license as required by NRS Ch. 76

23       81.    Upon information and belief, SRC did not ever obtain a certificate of exemption

24  with respect to the Note or DOT at issue herein, nor does it qualify for such an exemption.

25  SRC held itself out to Debtors and Westridge as being able to make loans secured by liens on real

26  property as evidenced by the Note and DOT, and additionally as evidenced, upon information and

27  belief, by their communications with the Lehners.

28

82.     Therefore, pursuant to NRS 645B.0127(c) SRC held itself out as and offered the services of a Mortgage Company without having the applicable license required by Nevada Law.

83.     On or about April 7, 2023, NTDS in its capacity as trustee under the DOT initiated foreclosure proceedings against the Property on behalf of SRC by causing to be recorded that certain Notice of Breach and Election to Sell Under Deed of Trust against the Property as Clark County Recorder's Instrument Number 202304070000194.

84.     Pursuant to NRS 645B.920, "[i]f a person, or any general partner, director, officer, agent or employee of a person violates the provisions of NRS 645B.900 or 645B.910, any contracts entered into by that person for the mortgage transaction are voidable by the other party to the contract."

85.     Because SRC violated the provisions of NRS 645B.900, the Note and DOT were voidable under NRS 645B.920, SRC is barred from profiting under the trerms of the note in deed of trust, including the charging of interest and late fees.

86.     Pursuant to NRS 645B.950, "a person, or any general partner, director, officer, agent or employee of a person, who violates any provision of [Chapter 645B of the NRS], a regulation adopted pursuant to [Chapter 645B of the NRS] or an order of the Commissioner is guilty of a misdemeanor."

87.     Because SRC and Plack were engaged in a crime when the loan was issued, they cannot profit from that crime, and are, at most, entitled to reimbursement for the remaining principal balance on the loan.

88.     Following a settlement with Lehner's bankruptcy trustee - in which SRC agreed to pay $437,500 in settlement of the Trustee's claims,

89.     Importantly, SRC also agreed to bear its own attorney's fees and costs related to the proceedings.

90.     SRC proceeded to foreclose on the Property.

91.     At the time the Notice of Sale was recorded on October 30, 2024, SRC indicated that the amount expected to be owed at the time of the December 2024 sale was $2,135,108.27.

92.     Under Nevada law, a Trustee is supposed to act as a neutral, and not for the benefit of a beneficiary. NRS 107.028 provides, in relevant part: "[t]he trustee shall act impartially and in good faith with respect to the deed of trust and shall act in accordance with the laws of this State."

93.     At the time of the foreclosure sale on December 11, 2024, Poshbaby, LLC was the only qualified bidder, and had brought certified funds in excess of $2,900,000.

94.     SRC, through the trustee, opened the bidding with a purported "credit bid" of $2,500,000.

95.     However, pursuant to the terms of the Note, SRC's inability to collect interest on the Note, and SRC's agreement to bear its own attorney's fees and costs, it would not be possible for the amount owed to SRC at the time of the sale to be $2.5M, unless SRC was improperly including amounts it is not entitled to collect.

96.     Nonetheless, Poshbaby entered a bid that exceeded $2.5M.

97.     Even though a trustee is barred from acting as a purchasing agent for SRC, the trustee began to bid on behalf of SRC, who had not qualified to bid, nor appeared with certified funds, as required by law and by the policies and procedures of Nevada Trust Deed Services.

98.     SRC, using the trustee as its own cash-bid proxy entered bids in the auction in the amount of $2,600,001.00, which Poshbaby beat; then $2,700,002.00, which Poshbaby beat, and $2,800,003.00, which Poshbaby beat, and then finally for $3,000,003.

99.     While SRC may "may bid and purchase at such sale" pursuant to the provisions of NRS 107, they must attend and bid on their own behalf like any other bidder, and may not utilize the trustee, who is required by law to remain impartial, as their proxy.

100.    Poshbaby, through its member Tzahi Salomon, spoke with James Plack following the sale.

101.    During the conversation, Plack falsely asserted that SRC was owed more than $3.7M on the loan, which would be impossible, given the amounts stated in the Notice of Sale, and the documents filed into the Bankruptcy action.

102.    Plack claimed the amount was so high because of "attorney's fees."

103.    Another female representative of SRC indicated that SRC had also included the settlement payment it made in settlement of the claims of the Bankruptcy Trustee in the amount due and owing.

104.    However, despite the fact that SRC was forced to settle various claims for malfeasance with the Bankruptcy trustee does not negate the fact that Westridge – an entity separate from Robin Lehner – made a $650,000 payment to reduce the amount due and owing on the loan.

105.    Upon information and belief, SRC egregiously and illegally inflated the amount it was owed under the terms of the Note in order to manipulate the foreclosure sale such that the property would be underwater and to ensure that no bidder at the public auction could prevail, and to enable SRC to "cash bid" on the property, without actually having cash.

106.    SRC manipulated the outcome of the auction in an effort to recover more than was owed to SRC.

107.    A lender in Nevada is not privileged to manipulate sources of recovery in order to realize debt satisfaction in amounts substantially greater than the balance of the debt due. *First Interstate Bank v. Shields*, 102 Nev. 616, 619, 730 P.2d 429, 431 (1986)

108.    As the only qualified cash bidder at the auction, who bid more that SRC was owed, Poshbaby was entitled to purchase the Property at the foreclosure sale for the amount of $2,500,001.

109.    Poshbaby entered the highest qualified bid at the foreclosure sale, and was entitled to purchase the Property.

110.    SRC also purported to conduct the sale pursuant to article 9 of the UCC, to sell all the personal property and fixtures contained in the residence. *See* **Exhibit B.**

111.    The UCC (as well as Nevada law related to NRS 107 foreclosures) require that all sales be commercially reasonable.

112.    It is not commercially reasonable to allow an unqualified bidder, who did not appear at the sale with certified funds, to utilize the Trustee as its proxy for bidding against properly qualified bidders.

113.    Similarly, because the personal property and fixtures within the property were still subject to the Lehner's bankruptcy, SRC's claim to have foreclosed on those items may have rendered the entire process of the sale void, in which case the sale would need to be reconvened, and conducted in a proper, legal manner.

114.    Because SRC required the Trustee to act as its bidding proxy, and remunerated the trustee for its services, both SRC and the Trustee violated NRS 645.230 in conducting the sale.

115.    Plack indicated that he would agree to sell the property to Poshbaby, LLC for $3.4M. If Poshbaby were to accept this offer, Plack and SRC would have realized profits of over $1M from their crimes.

## FIRST CLAIM OF RELIEF

### (Deceptive Trade Practices)

116.    Poshbaby repeats and realleges the allegations of the preceding paragraphs of this Complaint as though fully set forth herein and incorporate the same herein by reference.

117.    SCR has conducted business in the State of Nevada without all required licenses. Indeed, SRC is not licensed to do business at all in Nevada, let alone licensed to perform the services of a mortgage lender or servicer.

118.    SRC violated state and federal law in issuing the loan to the Lehners, through their LLC. Thus, SRC may not profit from its criminal and otherwise improper acts.

119.    Upon information and belief, SRC made a false statement to Nevada Trust Deed Services regarding the purported amount owed under the terms of its note in order to manipulate the outcome of the sale to the detriment of Poshbaby, the only qualified bidder in attendance.

120.    The foreclosure sale was a transaction under NRS 598.

121.    Poshbaby has been damaged in an amount exceeding $15,000.

122.    Poshbaby has additionally been required to retain the services of an attorney to prosecute its claims and is entitled to recovery of its attorney's fees and costs.

## SECOND CLAIM FOR RELIEF

### (Consumer Fraud)

123.    Poshbaby repeats and realleges the allegations of the preceding paragraphs of this

1  Complaint as though fully set forth herein and incorporate the same herein by reference.

2      124.    Under NRS 41.600, any party who is a victim of consumer fraud may bring an

3  action to prosecute the fraud against the perpetrator.

4      125.    NRS 41.600 defines consumer fraus, in relevant part, as "A deceptive trade practice

5  as defined in NRS 598.0915 to 598.0925, inclusive."

6      126.    Because SRC violated Nevada's deceptive trade practices act, as set forth herein,

7  SRC also committed consumer fraud against Poshbaby.

8      127.    Poshbaby has been damaged in an amount exceeding $15,000.

9      128.    Poshbaby has additionally been required to retain the services of an attorney to

10  prosecute its claims and is entitled to recovery of its attorney's fees and costs.

11                          **THIRD CLAIM FOR RELIEF**

12                            **(Unjust Enrichment)**

13      129.    Poshbaby repeats and realleges the allegations of the preceding paragraphs of this

14  Complaint as though fully set forth herein and incorporate the same herein by reference.

15      130.    SRC has been enriched by claiming illegal profits, interest, fees, and other charges

16  under the Note, in order to manipulate the outcome of the auction.

17      131.    If SRC is allowed to retain the benefits of its illegal inflation of the amounts claimed

18  to be due and owing under the note, the retention would be against the principles of equity.

19      132.    The retention of the profits of SRC's wrongdoing would also reward the

20  wrongdoing of SRC, who illegally issued the loan to an individual who had no ability to repay it,

21  without any of the required licenses, and without following any federal laws for the issuance or

22  servicing of a home loan.

23      133.    SRC cannot, under equity, retain the benefits of its inflation of the amounts due.and

24  owing to illegally bid at the foreclosure sale through the trustee.

25      134.    Under the circumstances, it is inequitable for SRC to retain these benefits at the

26  expense of Poshbaby.

27      135.    Poshbaby has been damaged in an amount exceeding $15,000.

28      136.    Poshbaby has additionally been required to retain the services of an attorney to

1  prosecute its claims and is entitled to recovery of its attorney's fees and costs

2  <center>**FOURTH CLAIM FOR RELIEF**</center>

3  <center>**(Declaratory Relief)**</center>

4      137.    Poshbaby repeats and realleges the allegations of the preceding paragraphs of this

5  Complaint as though fully set forth herein and incorporate the same herein by reference.

6      138.    Pursuant to NRS 30.030 and NRCP 57, a dispute has arisen between Poshbaby and

7  SRC as to the rights of the parties in the Property, and Poshbaby is entitled to a declaration of its

8  rights therein.

9      139.    Poshbaby asserts that, as the highest qualified bidder in attendance at the

10  foreclosure sale, Poshbaby acquired ownership of the property pursuant to NRS 107.

11      140.    Poshbaby is further entitled to a declaration that the sale, in which the Trustee was

12  illegally utilized as a bidding proxy for SRC was conducted in violation of NRS 107.028 and was

13  additionally commercially unreasonable, under both NRS 107 and the Uniform Commercial Code.

14      141.    Poshbaby has been damaged in an amount exceeding $15,000.

15      142.    Poshbaby has additionally been required to retain the services of an attorney to

16  prosecute its claims and is entitled to recovery of its attorney's fees and costs.

17  <center>**FIFTH CLAIM FOR RELIEF**</center>

18  <center>**(Quiet Title)**</center>

19      143.    Poshbaby repeats and realleges the allegations of the preceding paragraphs of this

20  Complaint as though fully set forth herein and incorporate the same herein by reference.

21      144.    Poshbaby asserts that, as the highest qualified bidder in attendance at the

22  foreclosure sale, Poshbaby acquired ownership of the property pursuant to NRS 107.

23      145.    Poshbaby seeks an order from this Court quieting title to the property in the name

24  of Poshbaby, in exchange for Poshbaby's bid amount of $2,500,001, which Poshbaby is ready,

25  willing and able to pay.

26      146.    Poshbaby has additionally been required to retain the services of an attorney to

27  prosecute its claims and is entitled to recovery of its attorney's fees and costs.

28

<center>Page 10 of 11</center>

**WHEREFORE, PLAINTIFF PRAYS FOR THE FOLLOWING RELIEF:**

1. For general, actual, special, consequential, and other damages in an amount to be determined at trial.

2. For equitable disgorgement of the profits claimed by SRC under its illegal loan;

3. For an order declaring and quieting title to the Property in the name of Poshbaby, LLC;

4. For recovery of Poshbaby reasonable attorney's fees and costs pursuant to statutory and case law;

5. For other further and additional relief this Court may deem proper.

DATED this 18th day of December, 2024.

*s/ Allison R. Schmidt*
Allison R. Schmidt, Esq.
Nevada Bar No. 10743
NEVADA'S LAWYERS
7250 S. Durango Dr. Suite 130-A295
Las Vegas, NV 89113
702.900.9040
*Attorney for Plaintiff Poshbaby LLC.*

# EXHIBIT A

#2015-138

**UNITED STATES OF AMERICA**
**DEPARTMENT OF THE TREASURY**
**OFFICE OF THE COMPTROLLER OF THE CURRENCY**

| | |
|---|---|
| In the Matter of )<br><br>**JAMES E. PLACK,** individually, )<br>and as an institution-affiliated party of )<br><br>AMERICAN BANK )<br>ROCKVILLE, MARYLAND )<br>(FEDERAL SAVINGS ASSOCIATION) ) | OCC AA-EC-2014-90 |

## CONSENT ORDER

WHEREAS, the Office of the Comptroller of the Currency ("OCC") initiated proceedings against James E. Plack ("Respondent") pursuant to 12 U.S.C. §§ 1818(e) and (i) through the issuance of a Notice of Charges for Removal and Prohibition and Notice of Assessment of Civil Money Penalty dated October 29, 2014 ("Notice");

WHEREAS, on December 10, 2014, Respondent filed an Answer to the Notice denying the allegations contained therein;

WHEREAS, on September 9, 2015, Respondent filed an Amended Answer to the Notice denying the allegations contained therein;

WHEREAS, in the interest of cooperation and to avoid the costs associated with future administrative and judicial proceedings with respect to this matter, Respondent desires to enter into this Consent Order ("Order") issued pursuant to 12 U.S.C. §§ 1818(e) and (i);

NOW, THEREFORE, it is stipulated by and between the OCC, through the duly authorized representative of the Comptroller of the Currency ("Comptroller"), and Respondent that:

## Article I

### JURISDICTION

(1)     American Bank, Rockville, Maryland ("Bank") is an "insured depository institution" as that term is defined in 12 U.S.C. § 1813(c)(2).

(2)     Respondent is the President, CEO, and Director of the Bank and is an "institution-affiliated party" of the Bank as that term is defined in 12 U.S.C. § 1813(u), having served in such capacity within six (6) years from the date hereof. *See* 12 U.S.C. § 1818(i)(3).

(3)     The Bank is a Federal savings association within the meaning of 12 U.S.C. § 1813(q)(1)(C) and is chartered and examined by the OCC.  *See* 12 U.S.C. §§ 1461 *et seq.*, 5412(b)(2)(B).

(4)     The OCC is the "appropriate Federal banking agency" as that term is defined in 12 U.S.C. § 1813(q) and is therefore authorized to initiate and maintain this removal and prohibition and civil money penalty action against Respondent pursuant to 12 U.S.C. §§ 1818(e) and (i).

## Article II

### ORDER OF REMOVAL AND PROHIBITION

Respondent consents to, and it is ORDERED that:

(1)     With respect to the institutions and agencies set forth in paragraph (2) of this Article, Respondent hereby agrees that he shall not:

  (a)     participate in any manner in the conduct of their affairs;

  (b)     solicit, procure, transfer, attempt to transfer, vote, or attempt to vote any proxy, consent, or authorization with respect to any voting rights;

-2-

Initials: _____
Date: _____

(c) violate any voting agreement previously approved by the "appropriate Federal banking agency," as defined in 12 U.S.C. § 1813(q) (as amended); or

(d) vote for a director, or serve or act as an "institution-affiliated party," as defined in 12 U.S.C. § 1813(u) (as amended).

(2) The prohibitions in paragraph (1) of this Article apply to the following institutions and agencies:

(a) any insured depository institution, as defined in 12 U.S.C. § 1813(c);

(b) any institution treated as an insured bank under 12 U.S.C. §§ 1818(b)(3), (b)(4), or (b)(5);

(c) any insured credit union under the Federal Credit Union Act;

(d) any institution chartered under the Farm Credit Act of 1971;

(e) any appropriate Federal depository institution regulatory agency; and

(f) the Federal Housing Finance Agency and any Federal Home Loan Bank.

(3) The prohibitions of paragraphs (1) and (2) of this Article shall cease to apply with respect to a particular institution if Respondent obtains the prior written consent of both the OCC and the institution's "appropriate Federal financial institutions regulatory agency," as defined in 12 U.S.C. § 1818(e)(7)(D).

(4) This Order shall be enforceable to the same extent and in the same manner as an effective and outstanding order that has been issued and has become final pursuant to 12 U.S.C. § 1818.

-3-

Initials: _____
Date: _____

Article III

## ORDER FOR CIVIL MONEY PENALTY

Respondent consents to, and it is ORDERED that:

(1)    Respondent shall pay a civil money penalty in the amount of one hundred thousand dollars ($100,000), which shall be paid in full by no later than September 30, 2017 and shall be paid according to the following payment schedule:

(a)    Thirty thousand dollars ($30,000) on or before December 23, 2015;

(b)    Ten thousand dollars ($10,000) on or before March 31, 2016;

(c)    Ten thousand dollars ($10,000) on or before June 30, 2016;

(d)    Ten thousand dollars ($10,000) on or before September 30, 2016;

(e)    Ten thousand dollars ($10,000) on or before December 31, 2016;

(f)    Ten thousand dollars ($10,000) on or before March 30, 2017;

(g)    Ten thousand dollars ($10,000) on or before June 30, 2017;

(h)    Ten thousand dollars ($10,000) on or before September 30, 2017.

(2)    Respondent shall make payment by cashier's or certified check made payable to the Treasurer of the United States, and shall deliver the payment to: Office of the Comptroller of the Currency, P.O. Box 979012, St. Louis, Missouri 63197-9000.  The docket number of this case (AA-EC-2014-90) shall be entered on the submitted payment.

(3)    If Respondent fails to comply with any provision of this Order, then the entire balance of the civil money penalty amount described in this Article shall become immediately due and payable.

(4)    Until the $100,000 civil money penalty is paid in full, upon each and every subsequent change in place of residence, if any, Respondent shall notify the Director,

-4-

Initials: _____
Date: _____

Enforcement and Compliance Division, 400 7th Street, SW, Washington, DC 20219, of his new address within seven (7) days of such change in address.

(5)    This Order shall be enforceable to the same extent and in the same manner as an effective and outstanding order that has been issued and has become final pursuant to 12 U.S.C. § 1818.

## Article IV

## BANKRUPTCY

(1)    If Respondent files for bankruptcy protection prior to making the payments in full as required by this Order, Respondent shall notify the Director, Enforcement and Compliance Division, 400 7th Street, SW, Washington, DC 20219, within ten (10) days of the filing by providing a copy of the filing to the Director.

(2)    In any bankruptcy proceeding in which it is or may be contended that Respondent's obligation to pay restitution or a civil money penalty pursuant to this Order is subject to discharge, Respondent will in no manner contest the assertion of the Comptroller or any agent, officer, or representative of the United States, pursuant to 11 U.S.C. § 523(a) or otherwise, that the restitution or civil money penalty obligation in the Order arises out of acts which result in claims not dischargeable in bankruptcy.

## Article V

## CLOSING

(1)    By executing this Order, Respondent waives:

(a)    all rights to a hearing and a final agency decision pursuant to 12 U.S.C. §§ 1818(e) and (i) and 12 C.F.R. Part 109;

-5-

Initials: _____
Date: _____

(b)    all rights to seek judicial review of this Order;

(c)    all rights in any way to contest the validity of this Order; and

(d)    any and all claims for fees, costs, or expenses against the United States, the OCC, or any officer, employee, or agent of the OCC, related in any way to this enforcement matter or this Order, whether arising under common law or under the terms of any statute, including, but not limited to, the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412.

(2)    Respondent shall not cause, participate in, or authorize the Bank (or any subsidiary or affiliate thereof) to incur, directly or indirectly, any expense relative to the negotiation and issuance of this Order except as permitted by 12 C.F.R. § 145.121 and Part 359. In addition, Respondent shall not, directly or indirectly, obtain or accept any indemnification (or other reimbursement) from the Bank (or any subsidiary or affiliate of the Bank) with respect to such amounts except as permitted by 12 C.F.R. § 145.121 and Part 359; provided, however, Respondent may not obtain or accept such indemnification with respect to the payment of the civil money penalty.

(3)    Respondent acknowledges that he has read and understands the premises and obligations of this Order and declares that no separate promise or inducement of any kind has been made by the OCC or any officer, employee, or agent of the OCC to cause or induce Respondent to agree to consent to the issuance of this Order and/or to execute this Order.

(4)    This Order constitutes a settlement of any proceedings arising out of the facts, omissions, or violations described in the Notice. The OCC agrees not to institute the proceeding referenced in the first whereas clause of this Order for the specific acts, omissions, or violations described in the Notice, unless such acts, omissions, or violations reoccur. However, the specific

-6-

Initials: _____
Date: _____

acts, omissions, or violations described in the Notice may be used by the OCC in future enforcement actions to establish a pattern of misconduct or the continuation of a pattern of misconduct.

(5)    This Order shall not be construed as an adjudication on the merits and, except as set forth above in paragraph (4) above, shall not inhibit, estop, bar, or otherwise prevent the OCC from taking any action affecting Respondent if, at any time, the OCC deems it appropriate to do so to fulfill the responsibilities placed upon the OCC by the several laws of the United States.

(6)    Nothing in this Order shall preclude any proceedings brought by the OCC to enforce the terms of this Order, and nothing in this Order constitutes, nor shall Respondent contend that it constitutes, a waiver of any right, power, or authority of any other representatives of the United States or agencies thereof, including the Department of Justice, to bring other actions deemed appropriate.

(7)    This Order is intended to be, and shall be construed to be, a final order issued pursuant to 12 U.S.C. § 1818, and expressly does not form, and may not be construed to form, a contract binding on the United States, the OCC, or any officer, employee, or agent of the OCC.  Respondent expressly acknowledges that no officer, employee, or agent of the OCC has statutory or other authority to bind the United States, the United States Treasury Department, the OCC, or any other federal bank regulatory agency or entity, or any officer, employee, or agent of those entities, to a contract affecting the OCC's exercise of its supervisory responsibilities.

(8)    This Order is "issued with the consent of . . . the institution-affiliated party concerned," pursuant to 12 U.S.C. § 1818(h)(2).

-7-

Initials: _____
Date: _____

(9)     The terms of this Order, including this paragraph, are not subject to amendment or modification by any extraneous expression, prior agreements, or prior arrangements between the parties, whether oral or written.

(10)     The provisions of this Order are effective upon issuance by the OCC, through the Comptroller's duly authorized representative, whose hand appears below, and shall remain effective and enforceable, except to the extent that, and until such time as, any provisions of this Order shall have been amended, suspended, waived, or terminated in writing by the OCC, through the Comptroller's duly authorized representative.


IN TESTIMONY WHEREOF, the undersigned has hereunto set his hand.


s/James E. Plack

James E. Plack

12-17-2015

Date


**IT IS SO ORDERED.**


s/Michael R. Brickman

Michael R. Brickman
Deputy Comptroller for Special Supervision

12/17/2015

Date

Initials: _____
Date: _____

EXHIBIT B

Inst #: 20241101-0000100
Fees: $42.00
11/01/2024 07:16:01 AM
Receipt #: 5730237
Requestor:
Nevada Trust Deed Service
Recorded By: GARCIAC   Pgs: 2

**Debbie Conway**
**CLARK COUNTY RECORDER**
Src: ERECORD
Ofc: ERECORD

APN:    138-30-712-014

RETURN TO/TRUSTEE CONTACT INFO:
Nevada Trust Deed Services
10161 Park Run Drive, Suite 150
Las Vegas, NV 89145
(702)733-9900

# NOTICE OF TRUSTEE'S SALE
# UNIFIED SALE

### FILE NO 23-03-009-FCL
### DATED: October 30, 2024

On November 22, 2024 at 09:30 AM, Nevada Trust Deed Services, as duly appointed or substituted Trustee under and pursuant to the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust") recorded as Instrument No. 20220408-0001328, and as modified or amended, if applicable, in the Office of the County Recorder of CLARK County, Nevada executed by Westridge Property Management, LLC, a Delaware limited liability company by reason of now continuing default in the payment or performance of obligations secured by said Deed of Trust, including the Notice of Breach and Election to Sell Under Deed of Trust which was recorded in the Office of the County Recorder of CLARK County, Nevada, by the beneficiary and the undersigned more than three months prior to the date thereof, WILL CAUSE TO BE SOLD AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at the time of sale in lawful money of the United States of America) at the front entrance to Nevada Legal News, 930 S. Fourth Street, Las Vegas, NV 89101, all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as:

LOT 22 IN BLOCK A OF CANYON FAIRWAYS, AS SHOWN ON THE FINAL MAP OF SUMMERLIN VILLAGE 3 CUSTOM LOTS UNIT NO. 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 74 OF PLATS, PAGE 36, AND AS AMENDED BY CERTIFICATE OF AMENDMENT RECORDED AUGUST 20, 1996 IN BOOK 960820 AS DOCUMENT NO. 01210 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

Together with any and all improvements, personal property and fixtures located thereon or otherwise described in the Deed of Trust and in any other instruments in favor of the Beneficiary, and all singular tenements, hereditaments and appurtenances thereunto belonging or appertaining, rents, issues and profits thereof. All special declarant's rights (if applicable) now held by Trustor and any and all other declarant's rights encumbered by the Deed of Trust and now held by Trustor, if applicable, to be sold in connection with, and at the same time and place as, the real property described above.

In addition, the Beneficiary shall, as provided in the Nevada Uniform Commercial Code, cause, the personal property and rights described in the Deed of Trust in which the Beneficiary was granted a lien and security interest (including, without limitation, goods, materials, supplies, fixtures, equipment, machinery, furniture and furnishings; income, receipts, revenues, rents, issues and profits of the above described real property; and documents, instruments, agreements, permits, licenses, claims, causes of

action, books, records, and files related to the above described real property) to be sold in connection with, and at the same time and place as, the real property.

Commonly known as:    9501 Balatta Canyon Crt, Las Vegas, NV 89144,  APN: 138-30-712-014

If a street address or common designation of property is shown, no warranty is given as to its completeness or correctness.

Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal balance of the obligations secured by said Deed of Trust, to wit:  $2,135,108.27 together with interest, fees, premiums and charges thereon, as provided in said Commercial Promissory Note and related loan documents, advances, if any, under the terms of said Deed of Trust, fees, charges and expenses of Trustee and of the Trusts created by said Deed of Trust.

NEVADA TRUST DEED SERVICES

By:    _Michele Dobar_

Michele Dobar, Foreclosure Officer

Published in Nevada Legal News on the following dates:
November 1, 2024, November 8, 2024, November 15, 2024

STATE OF NEVADA
COUNTY OF CLARK

This instrument was acknowledged before me on October 30, 2024 by Michele Dobar, as Foreclosure Officer of Nevada Trust Deed Services

Signature    _____
                    (Notary Public)

T. M. CHAU
NOTARY PUBLIC
STATE OF NEVADA
APPOINTMENT NO. 06-103867-1
MY APPT. EXPIRES FEB. 17, 2029

EXHIBIT 2

Exhibit 2

Electronically Filed
12/18/2024 2:30 PM
Steven D. Grierson
CLERK OF THE COURT

**LIS**
Allison R. Schmidt
Nevada Bar No. 10743
NEVADA'S LAWYERS
7250 S. Durango Dr.
Suite 130-A295
Las Vegas, NV 89113
702.900.9040
***Attorney for Plaintiff,***
***Poshbaby, LLC***

## EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| POSHBABY, LLC, a Nevada Limited Liability Company, | Case No.: :A-24-908421-C |
| Plaintiff, | Dept. No.: VI |
| v. | **LIS PENDENS** |
| SOUTH RIVER CAPITAL, LLC a Maryland Limited Liability Company, and Does I-X, inclusive, | |
| Defendants | |

52.     PLEASE TAKE NOTICE, that Plaintiff, POSHBABY, LLC ("Poshbaby" or "Plaintiff) has filed a civil action pertaining to the residential real property located in Clark County, Nevada commonly known as 9501 Balatta Canyon Court, Las Vegas, Nevada 89144, bearing Clark County Assessor's Parcel Number 138-30-712-014 (the "Property"), and more particularly described as:

LOT 22 IN BLOCK A OF CANYON FAIRWAYS, AS SHOWN ON THE FINAL MAP OF SUMMERLIN VILLAGE 3 CUSTOM LOTS UNIT NO 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 74 OF PLATS, PAGE 36, AND AS AMENDED BY CERTIFICATE OF AMENDMENT RECORDED AUGUST 20,

1996 IN BOOK 960820 AS DOCUMENT NO 01210 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA

DATED this 18th day of December, 2024.

<div align="right">

_s/ Allison R. Schmidt_
Allison R. Schmidt, Esq.
Nevada Bar No. 10743
NEVADA'S LAWYERS
7250 S. Durango Dr. Suite 130-A295
Las Vegas, NV 89113
702.900.9040
**_Attorney for Plaintiff Poshbaby LLC._**

</div>

EXHIBIT 3

Exhibit 3

Electronically Filed
12/18/2024 2:38 PM
Steven D. Grierson
CLERK OF THE COURT

**IAFD**
Allison R. Schmidt
Nevada Bar No. 10743
NEVADA'S LAWYERS
7250 S. Durango Dr.
Suite 130-A295
Las Vegas, NV 89113
702.900.9040
***Attorney for Plaintiff,***
***Poshbaby, LLC***

## EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| POSHBABY, LLC, a Nevada Limited Liability Company, | Case No.: :A-24-908421-C |
| Plaintiff, | Dept. No.: VI |
| v. | **INITIAL APPEARANCE FEE DISCLOSURE** |
| SOUTH RIVER CAPITAL, LLC a Maryland Limited Liability Company, and Does I-X, inclusive, | |
| Defendants | |

**INITIAL APPEARANCE FEE DISCLOSURE (NRS CHAPTER 19)**

Pursuant to NRS Chapter 19, as amended by Senate Bill 106, filing fees are submitted for parties appearing in the above entitled action as indicated below:

     PLAINTIFF BDJ REALTY, INC.…………………………………$270.00

                         **TOTAL   $270.00**

DATED this 18TH day of December, 2024.

                     *s/ Allison R. Schmidt*
                     Allison R. Schmidt, Esq.
                     Nevada Bar No. 10743
                     7250 S. Durango Dr. Suite 130-A295
                     Las Vegas, NV 89113
                     702.900.9040
                     ***Attorney for Plaintiff Poshbaby LLC***

EXHIBIT 4

**Exhibit 4**

Electronically Issued
12/18/2024 2:35 PM

**SUMM**
Allison R. Schmidt
Nevada Bar No. 10743
NEVADA'S LAWYERS
7250 S. Durango Dr.
Suite 130-A295
Las Vegas, NV 89113
702.900.9040
*Attorney for Plaintiff,*
*Poshbaby, LLC*

### EIGHTH JUDICIAL DISTRICT COURT

### CLARK COUNTY, NEVADA

|  |  |
|---|---|
| POSHBABY, LLC, a Nevada Limited Liability Company, | Case No.: :A-24-908421-C |
| Plaintiff, | Dept. No.: VI |
| v. | |
| SOUTH RIVER CAPITAL, LLC a Maryland Limited Liability Company, and Does I-X, inclusive, | **SUMMONS** |
| Defendants | |

TO: RESPONDENT :
SOUTH RIVER CAPITAL LLC
c/o  JAMES PLACK
1500 WILD CRANBERRY DRIVE
CROWNSVILLE MD 21032

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU**

**WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS.**

**READ THE INFORMATION BELOW.**

TO THE DEFENDANT(S): A civil Complaint has been filed by the Plaintiff(s) against

you for the relief set forth in the Complaint.

1. If you intend to defend this lawsuit, within 20 days after this Summons is served on

Page 1 of 2

1  you, exclusive of the day of service, you must do the following: (a) File with the Clerk

2  of this Court, whose address is shown below, a formal written response to the Complaint in

3  accordance with the rules of the Court, with the appropriate filing fee.

4  (b) Serve a copy of your response upon the attorney whose name and address is shown

5  below.

6  2. Unless you respond, your default will be entered upon application of the Plaintiff(s)

7  and failure to so respond will result in a judgment of default against you for the relief

8  demanded in the Complaint, which could result in the taking of money or property or

9  other relief requested in the Complaint.

10  3. If you intend to seek the advice of an attorney in this matter, you should do so promptly

11  so that your response may be filed on time.

12  4. The State of Nevada, its political subdivisions, agencies, officers, employees, board

13  members, commission members and legislators each have 45 days after service of this

14  Summons within which to file an Answer or other responsive pleading to the

15  Complaint.                          STEVEN D. GRIERSON
                                    CLERK OF THE COURT

16

17                                  By: _____

18                                  Deputy Clerk          12/20/2024
                                    Regional Justice Center
19                                  200 Lewis Ave.
                                    Las Vegas, NV 89155
20                                  Yvonne Gomez

21     Submitted by:

22     s/ Allison R. Schmidt
       Allison R. Schmidt, Esq.
23     Nevada Bar No. 10743
       NEVADA'S LAWYERS
24     7250 S. Durango Dr. Suite 130-A295
       Las Vegas, NV 89113
25     702.900.9040

26     Attorney for Plaintiff Poshbaby LLC.

27

28

EXHIBIT 5

Exhibit 5

**ANDERSEN BEEDE WEISENMILLER**
Ryan A. Andersen, Esq.
Nevada Bar No. 12321
Email: *ryan@abwfirm.com*
Michael N. Beede, Esq.
Nevada Bar No. 13068
Email: *mike@abwfirm.com*
Valerie Y. Zaidenberg, Esq.
Nevada Bar No. 15839
Email: *valerie@abwfirm.com*
3199 E Warm Springs Rd, Ste 400
Las Vegas, Nevada 89120
Phone: 702-522-1992
Fax:    702-825-2824
*Counsel for Robert E Atkinson, Trustee*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>ROBIN LINUS LEHNER and DONYA TINA LEHNER,<br><br>        Debtor. | Case No.: 22-14616-NMC<br>Chapter 7 |
| ROBERT E. ATKINSON, as Trustee of the Bankruptcy Estate of ROBIN LINUS LEHNER and DONYA TINA LEHNER; and WESTRIDGE PROPERTY MANAGEMENT LLC<br><br>        Plaintiffs,<br><br>v.<br><br>SOUTH RIVER CAPITAL LLC; NEVADA TRUST DEED SERVICES LLC; SURE SPORTS, LLC; DOE DEFENDANTS I through X; and ROE CORPORATIONS XI through XX,<br><br>        Defendants. | Adversary No. 23-01108-NMC<br><br>**SECOND AMENDED ADVERSARY COMPLAINT** |

1    Robert E. Atkinson, ("Trustee" or "Plaintiff"), in his capacity as Chapter 7 trustee of the

2 bankruptcy estate of Robin Linus Lehner and Donya Tina Lehner, ("Bankruptcy Estate"), and Westridge

3 Property Management LLC, by and through their counsel, hereby submits this Second Amended

4 Adversary Complaint ("Complaint") against Defendants, South River Capital LLC, Sure Sports, LLC,

5 and Nevada Trust Deed Services LLC, and alleges as follows based on information available to them

6 and otherwise upon information and belief:

**JURISDICTION AND VENUE**

7

8    1.    This Court has subject matter jurisdiction over this adversary proceeding pursuant to

9 28 U.S.C. § 1334(b).

10    2.    This action is commenced pursuant to Federal Rules of Bankruptcy Procedure 7001(1)

11 and is a core proceeding under 28 U.S.C. § 157(b).

12    3.    If this adversary proceeding is determined to not be a core proceeding, or if this

13 adversary proceeding is a core proceeding under 28 U.S.C. §157(b) but may not, as a constitutional

14 matter, be adjudicated as such, then Trustee consents to the entry of final orders or judgments by the

15 bankruptcy court.

**PARTIES**

16

17    4.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs in this

18 Complaint as if fully set forth herein.

19    5.    Plaintiff Robert E. Atkinson is the duly appointed Chapter 7 trustee of the Bankruptcy

20 Estate of Robin Linus Lehner and Donya Tina Lehner (hereinafter, "Debtors").

21    6.    Plaintiff Westridge Property Management LLC (hereinafter, "Westridge") is a

22 Delaware Limited Liability Company.

23    7.    Defendant South River Capital LLC (hereinafter, "SRC") is a Maryland Limited

24 Liability Company.

25    8.    Defendant Sure Sports, LLC (hereinafter, "Sure Sports") is a Florida Limited Liability

26 Company.

27

ANDERSEN
BEEDE
WEISENMILLER

ABW

9.      Defendant Nevada Trust Deed Services LLC (hereinafter, "NTDS") is a Nevada Limited Liability Company.

10.     The true names and capacities of DOE DEFENDANTS I through X, inclusive, are unknown to Plaintiffs, who therefore sues such Defendants by these fictitious names. Plaintiffs are informed and believe that each Defendant is responsible in some manner for the events and happenings referred to, and damages caused thereby to Plaintiffs as alleged herein. Plaintiffs will ask leave of this Court to amend his Complaint to insert true names and capacities when such Defendants have been ascertained to join such Defendants in this action.

11.     The true names and capacities of ROE CORPORATIONS XI through XX, inclusive, are unknown to Plaintiffs, who therefore sue such Defendants by these fictitious names. Plaintiffs are informed and believe that each Defendant is responsible in some manner for the events and happenings referred to, and damages caused thereby to Plaintiffs as alleged herein. Plaintiffs will ask leave of this Court to amend their Complaint to insert true names and capacities when such Defendants have been ascertained to join such Defendants in this action.

**GENERAL ALLEGATIONS**

12.     Plaintiffs hereby incorporate by reference each of the preceding paragraphs in this Complaint as if fully set forth herein.

13.     Robin Linus Lehner and Donya Tina Lehner are Chapter 7 debtors in the above-captioned bankruptcy case and are proper persons domiciled in Nevada.

14.     Debtors filed the above-captioned bankruptcy case on December 30, 2022.

15.     This action relates, among other things, to the ownership and title to that certain residential real property located in Clark County, Nevada commonly known as 9501 Balatta Canyon Court, Las Vegas, Nevada 89144, bearing Clark County Assessor's Parcel Number 138-30-712-014 (the "Property"), and more particularly described as:

LOT 22 IN BLOCK A OF CANYON FAIRWAYS, AS SHOWN ON THE FINAL MAP OF SUMMERLIN VILLAGE 3 CUSTOM LOTS UNIT NO 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 74 OF PLATS, PAGE 36, AND AS AMENDED BY CERTIFICATE OF AMENDMENT RECORDED AUGUST 20, 1996 IN BOOK

960820 AS DOCUMENT NO 01210 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA

16.     Debtor, Robin Linus Lehner through his entity, Westridge, purchased the Property by way of a Grant, Bargain, and Sale Deed recorded on November 18, 2020, as Clark County Recorder's Instrument Number 20201119-0001305.  The Property has been the Debtors' primary residence since.

17.     Westridge is a single-member limited liability company.  As of the petition date, debtor, Robin Lehner, was the sole member of Westridge. "Where a debtor has a membership interest in a single-member LLC and files a petition for bankruptcy under Chapter 7, the Chapter 7 trustee succeeds to all of the debtor's rights, including the right to control that entity, and a trustee need not take any further action to comply with state law before exercising such control." *In re Cleveland*, 519 B.R. 304, 306–07 (D. Nev. 2014)

18.     On or about April 5, 2022, Robin Lehner, through his entity, Westridge, entered into that certain Commercial Promissory Note (hereinafter, the "Note") and Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing (hereinafter, the "DOT").  The DOT was recorded on April 8, 2022, as Clark County Recorder's Instrument Number 20220408-0001328.  (The entry by Westridge and SRC into the Note and DOT are collectively referred to as the "Transaction"). SRC is named as the beneficiary under the DOT and is named as the lender under the Note.

19.     Westridge was a client of SRC by virtue of the Transaction.

20.     The DOT recorded against the Property's parcel number purports to secure payment of the amounts alleged to be owed under the Note.

21.     SRC has no other recorded interest in the Property.

22.     Sure Sports operates a business which offers and coordinates predatory short-term loans to its professional athlete clients. Sure Sports' website[1] represents that "Sure Sports provides financing and contract advances to professional athletes. We base our offerings on current or future earnings, using signed player contracts from the NFL, MLB, NBA, WNBA, NHL, MLS, golf, and auto racing."

23.     It is Sure Sports' policy, pattern, and practice to cause its client athletes to become dependent on a series of short-term, high-interest, high-fee loans, each facilitated by Sure Sports and

[1] https://suresports.com/services/contract-based-financing/

placed with its partner lenders, including SRC.  Sure Sports receives significant compensation for each transaction.

24.    The loans Sure Sports facilitates for its professional athlete clients are designed to come due on dates which it knows the Athlete is fully engaged with his or her professional obligations, such that the athlete is unlikely to be able to dedicate sufficient time and attention to the terms of a necessary refinancing loan. Such times include, without limitation, training camp and playoffs.

25.    Sure Sports' website specifically refers to the NHL athletes it targets, as "Client[s].[2]"

26.    Sure Sports specifically represents on its website that the loans it offers may be for a "personal residence" or a "home."[3]

27.    Sure Sports acted in concert with SRC to facilitate the illegal consummation of the Transaction.  Sure Sports facilitted SRC's participation in the Transaction and induced Westridge to enter into the Transaction.

28.    At all times relevant to the facts alleged herein, the Property was the primary residence of Debtors.  Each of SRC and Sure Sports was expressly aware at the time of the Transaction that the Property was the primary residence of the Debtors and that the loan would be and was used for personal and household use.

29.    On or about November 21, 2022, Debtors, in their personal capacity, made a payment to SRC on the Note in the amount of $650,000.00 (hereinafter, the "Transfer").

30.    NRS 645B.0127 defines the term "Mortgage Company" as a person who directly or indirectly "holds himself or herself out as being able to make loans secured by liens on real property."

31.    Pursuant to NRS 645B.900, "[i]t is unlawful for any person to offer or provide any of the services of a mortgage company or mortgage loan originator or otherwise to engage in, carry on or hold himself or herself out as engaging in or carrying on the business of a mortgage company or mortgage loan originator without first obtaining the applicable license issued pursuant to [NRS 645B]" unless the person meets certain criteria for exemption.

---

[2] https://suresports.com/nhl-player-contract-based-financing/
[3] Id.

32.     SRC does not now hold, nor has it ever held, a license to act as a mortgage company in Nevada.

33.     Sure Sports does not now, nor has it ever held, a license to act as a mortgage company in Nevada.

34.     Upon information and belief, neither SRC nor Sure Sports ever obtained a certificate of exemption with respect to the Transaction at issue herein, nor does either qualify for such an exemption.

35.     SRC held itself out to Debtors and Westridge as being able to make residential mortgage loans secured by liens on real property as evidenced by the Note and DOT.  Therefore, pursuant to NRS 645B.0127(c), SRC held itself out as and offered the services of a Mortgage Company without having the applicable license required by Nevada Law.

36.     Upon information and belief, Sure Sports likewise held itself out to Debtors and Westridge as being able to make residential mortgage loans secured by liens on real property.

37.     On or about April 7, 2023, NTDS in its capacity as trustee under the DOT initiated foreclosure proceedings against the Property on behalf of SRC by causing to be recorded that certain Notice of Breach and Election to Sell Under Deed of Trust against the Property as Clark County Recorder's Instrument Number 202304070000194.

38.     Pursuant to NRS 645B.920, "[i]f a person, or any general partner, director, officer, agent or employee of a person violates the provisions of NRS 645B.900 or 645B.910, any contracts entered into by that person for the mortgage transaction are voidable by the other party to the contract."

39.     Because SRC violated the provisions of NRS 645B.900, the Note and DOT were voidable under NRS 645B.920.

40.     Trustee voided both the Note and DOT through written correspondence directed to SRC as provided by NRS 645B.920.

41.     Pursuant to NRS 645B.950, "a person, or any general partner, director, officer, agent or employee of a person, who violates any provision of [Chapter 645B of the NRS], a regulation adopted pursuant to [Chapter 645B of the NRS] or an order of the Commissioner is guilty of a misdemeanor."

42.     Pursuant to NRS 645B.930, "[i]n addition to any other remedy or penalty, if a person, or any general partner, director, officer, agent or employee of a person, violates the provisions of NRS 645B.900 or 645B.910, the client may bring a civil action against the person for: 1) Actual and consequential damages; 2) Punitive damages, which are subject to the provisions of NRS 42.005; 3) Reasonable attorney's fees and costs; and 4) Any other legal or equitable relief that the court deems appropriate."

### FIRST CLAIM FOR RELIEF
**(Declaratory Relief and Quiet Title Pursuant to NRS 30.010, et. Seq. and NRS 645B, et. seq. Against South River Capital LLC)**

43.     Plaintiffs incorporate each and every of the preceding paragraphs as if fully set forth herein.

44.     Pursuant to NRS 30.030, et seq. and NRS 40.010, this Court has the power and authority to declare Plaintiffs' rights and interests in the Property and to resolve the Parties' adverse claims to the Property.

45.     Pursuant to NRS 30.030, this Court also has the power to declare the Note void under NRS 645B.920.

46.     Westridge is the rightful owner of the Property by virtue of the Grant, Bargain, and Sale Deed recorded on November 18, 2020, as a Clark County Recorder's Instrument Number 20201119-0001305.

47.     SRC violated the provisions of NRS 645B.900 by holding itself out as and engaging in the business of a Mortgage Company[4] without a license or certificate of exemption when it entered into the Note and DOT.

48.     Trustee has voided the Note and DOT pursuant to NRS 645B.920 and has advised SRC of the same.

49.     Plaintiffs are entitled to a declaratory judgment from this Court finding that: (1) Westridge Property Management LLC owns the Property in fee simple, free and clear of any interest

---

[4] As defined by NRS 645B.0127.

ANDERSEN BEEDE WEISENMILLER

ABW

in the Property claimed by South River Capital LLC; and (2) that the Note and DOT are void and unenforceable.

### SECOND CLAIM FOR RELIEF
**(Civil Action for Damages Pursuant to NRS 645B.930 against South River Capital LLC)**

50.    Plaintiffs incorporate each and every of the preceding paragraphs as if fully set forth herein.

51.    Pursuant to NRS 645B.930, "[i]n addition to any other remedy or penalty, if a person, or any general partner, director, officer, agent or employee of a person, violates the provisions of NRS 645B.900 or 645B.910, the client may bring a civil action against the person for: (1) Actual and consequential damages; (2) Punitive damages, which are subject to the provisions of NRS 42.005; (3) Reasonable attorney's fees and costs; and (4) Any other legal or equitable relief that the court deems appropriate."

52.    SRC violated the provisions NRS 645B.900 by holding itself out as and engaging in the business of a Mortgage Company[5] without a license or certificate of exemption by entering into the Note and DOT.

53.    Plaintiffs have suffered damages as a result of SRC's violation of NRS 645B.900.

54.    Westridge Property Management LLC acquired the Property by way of Grant Bargain and Sale Deed, and Westridge Property Management LLC is the rightful owner of the Property by virtue thereof.

55.    The Bankruptcy Estate is the managing member of Westridge Property Management LLC by virtue of the Debtors' bankruptcy filing.

56.    SRC violated the provisions NRS 645B.900 by holding itself out as and engaging in the business of a Mortgage Company[6] without a license or certificate of exemption.

57.    Plaintiffs are entitled to a judgment in their favor for actual and consequential damages, punitive damages subject to the provisions of NRS 42.005, and reasonable attorneys' fees and costs,

---

[5] As defined by NRS 645B.0127.
[6] As defined by NRS 645B.0127.

each in an amount to be proven at trial. Plaintiffs are further entitled to any other legal or equitable remedy that this Court may deem appropriate.

<div align="center">

**THIRD CLAIM FOR RELIEF**
**(Unjust Enrichment against South River Capital LLC)**

</div>

58.     Plaintiffs incorporate each and every of the preceding paragraphs as if fully set forth herein.

59.     Pursuant to NRS 645B.950, "a person, or any general partner, director, officer, agent or employee of a person, who violates any provision of [Chapter 645B of the NRS], a regulation adopted pursuant to [Chapter 645B of the NRS] or an order of the Commissioner is guilty of a misdemeanor."

60.     Because SRC violated the provisions of NRS 645B.900, its actions concerning the Note and the Deed of Trust were illegal under Nevada law.

61.     As a result of SRC's conduct, not only did Debtor's enter into the Note and Deed of Trust, but Debtors made the Transfer to SRC in the amount of $650,000 on or about November 21, 2022.

62.     Trustee, on behalf of Westridge voided the Note and Deed of Trust and no valid contracts exist between Westridge and SRC.

63.     Unjust enrichment occurs whenever a person has or retains a benefit which in equity and good conscience belongs to another.

64.     It would be inequitable to allow SRC to retain any benefit it received on account of the Note and Deed of Trust, including the Transfer, when such benefits were only received by SRC as a result of SRC's illegal conduct.

65.     As a result, Plaintiffs are entitled judgment in their favor requiring SRC to disgorge any and all funds received by it on account of the Note or Deed of Trust, including the Transfer, as well as reasonable attorneys' fees and costs, each in an amount to be proven at trial. Plaintiffs are further entitled to any other legal or equitable remedy that this Court may deem appropriate.

**FOURTH CLAIM FOR RELIEF**

**(Avoidance of Preferential Transfer Pursuant to 11 U.S.C. § 547 against South River Capital LLC)**

66.    Plaintiffs incorporate each and every of the preceding paragraphs as if fully set forth herein.

67.    The Transfer was of an interest in property of Debtors.

68.    The Transfer was made to or for the benefit of SRC.

69.    The Transfer was made on account of antecedent debts owed by Debtors to SRC before the Transfer was made.

70.    Debtors' liabilities exceeded their assets at the time the Transfer was made.

71.    The Transfer was made while Debtors were insolvent, such insolvency being presumed pursuant to 11 U.S.C. § 547(f) in the ninety days preceding the Debtors' bankruptcy filing.

72.    The Transfer was made within ninety days of the Debtors' bankruptcy filing.

73.    The Transfer enabled SRC to receive more than it would receive: (i) in the Debtors' chapter 7 bankruptcy case; (ii) had the Transfer not been made; and (iii) if SRC had received payment of such debt to the extent provided by the Bankruptcy Code.

74.    Based upon the forgoing, the Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

**FIFTH CLAIM FOR RELIEF**

**(Fraudulent Transfer Pursuant to 11 U.S.C. §§ 544 and/or 548 against South River Capital LLC)**

75.    Plaintiffs incorporate each and every of the preceding paragraphs as if fully set forth herein.

76.    The Transfer was of an interest in Property of the Debtors.

77.    The Transfer was made in satisfaction of an obligation owed to SRC by Westridge, not an obligation owed by Debtors.

78.    The Debtors received neither consideration nor any goods or services from SRC in exchange for the Transfer by Debtors.

79.    As a result, the Debtors did not receive reasonably equivalent value in exchange for the Transfer.

80. The Transfer was made at a time when the Debtors were insolvent.

81. Based upon the foregoing, the Transfer is avoidable pursuant to 11 U.S.C. § 544 and/or 548.

## SIXTH CLAIM FOR RELIEF
**(Recovery of Avoided Transfer Pursuant to 11 U.S.C. § 550 against South River Capital LLC)**

82. Plaintiffs incorporate each and every of the preceding paragraphs as if fully set forth herein.

83. SRC was the initial transferee of the Transfer (hereinafter, the "Avoided Transfer").

84. SRC was the entity for whose benefit the Avoided Transfer was made.

85. Based on the foregoing, the Trustee is entitled to recover the Avoided Transfer or the value of the Avoided Transfer from SRC pursuant to 11 U.S.C. § 550(a).

## SEVENTH CLAIM FOR RELIEF
**(Disallowance of Claim Pursuant to 11 U.S.C. § 502(d) against South River Capital LLC)**

86. Plaintiffs incorporate each and every of the preceding paragraphs as if fully set forth herein.

87. SRC is the transferee of the Avoided Transfer.

88. SRC has not returned the Avoided Transfer to the Trustee.

89. Based upon the foregoing, and pursuant to 11 U.S.C. §§ 502(d) and/or (j), SRC's claims in this bankruptcy case, if any, must be disallowed until SRC returns to the Trustee the Avoided Transfer, plus any interest, fees, and costs permitted by law.

## EIGHTH CLAIM FOR RELIEF
**(Preliminary and Permanent Injunction against South River Capital LLC and Nevada Trust Deed Services)**

90. Plaintiffs incorporate each and every of the preceding paragraphs as if fully set forth herein.

91. On or about April 7, 2023, NTDS, in its capacity as trustee under the DOT, initiated foreclosure proceedings against the property on behalf of Defendant South River Capital LLC by causing to be recorded that certain Notice of Breach and Election to Sell Under Deed of Trust against the Property.

ANDERSEN
BEEDE
WEISENMILLER

ABW

92.    The DOT has been voided pursuant to NRS 645B and is not a valid encumbrance against the Property.

93.    No foreclosure may proceed under NRS 107 which is not supported by a valid and enforceable deed of trust.

94.    If the foreclosure sale is allowed to proceed, Plaintiffs will be dispossessed of the real property and will suffer irreparable harm for which compensatory damages are inadequate.

95.    Plaintiffs are entitled to a preliminary injunction and permanent injunction prohibiting Defendants from attempting to complete any foreclosure proceeding under the DOT or otherwise attempting to transfer title to the Property thereunder to protect the status quo.

### NINTH CLAIM FOR RELIEF
**(Civil Conspiracy against South River Capital LLC and Sure Sports LLC)**

96.    Plaintiffs incorporate each and every of the preceding paragraphs as if fully set forth herein.

97.    A claim for Civil Conspiracy exists where Defendants, by acting in concert, intend to accomplish an illegal objective for the purpose of harming the Plaintiff and Plaintiff sustains damage as a result.

98.    Defendants SRC and Sure Sports acted in concert to cause Westridge to enter into the Transaction with SRC.

99.    Neither SRC nor Sure Sports was licensed as a mortgage company under NRS 645B.

100.    Through the concerted action Sure Sports and SRC, SRC held itself out to Westridge as engaging in the business of a Mortgage Company[7] without a license under or certificate of exemption under NRS 645B.

101.    Pursuant to NRS 645B.950, "a person, or any general partner, director, officer, agent or employee of a person, who violates any provision of [Chapter 645B of the NRS], a regulation adopted pursuant to [Chapter 645B of the NRS] or an order of the Commissioner is guilty of a misdemeanor."

102.    SRC's entry into the Note and Deed of trust with Westridge was an unlawful objective and was materially facilitated and advanced by Sure Sports.

---

[7] As defined by NRS 645B.0127.

ANDERSEN
BEEDE
WEISENMILLER

ABW

1    103.    The unlawful objective was designed to harm Westridge.

2    104.    As a result of the acts of SRC and Sure Sport described herein, Westridge suffered

3    damages in an amount to be proven at trial.

4    105.    Plaintiffs are entitled to a judgment in their favor for actual and consequential damages,

5    punitive damages subject to the provisions of NRS 42.005, and reasonable attorneys' fees and costs,

6    each in an amount to be proven at trial.  Plaintiffs are further entitled to any other legal or equitable

7    remedy that this Court may deem appropriate.

8

9    ## **RESERVATION OF RIGHTS**

10    106.    This Complaint is intended to, among other things, seek recovery of all transfers

11    avoidable under Chapter 5 of Title 11 not specifically identified in the Complaint, including, without

12    limitation, any payments received during any applicable preference period or applicable fraudulent

13    transfer limitation period. Plaintiff reserves the right to amend this Complaint to seek recovery of

14    additional avoidable transfers made to SRC if such are revealed during discovery.

15    **WHEREFORE,** Plaintiffs requests that this Court enter a judgment in their favor and against

16    Defendants, as follows:

17    1)    An award of actual and consequential damages in excess of $10,000.00 to be proven at trial;

18    2)    Punitive damages in excess of $10,000.00 to be proven at trial;

19    3)    An award of attorneys' fees and costs;

20    4)    A declaration from this court that the Note and DOT are void and that Plaintiffs own the

21        Property free and clear any right, title, interest, lien, or claim by SRC;

22    5)    A finding that the Transfer is avoidable pursuant to 11 U.S.C. § 547(b);

23    6)    A finding that the Transfer is avoidable under 11 U.S.C. §§ 544 and/or 548;

24    7)    A finding that the Trustee is entitled to recover the Avoided Transfer or its value pursuant

25        to 11 U.S.C. § 550 and an award of damages against SRC and in favor of the Trustee in an

26        amount equal to the Avoided Transfer;

27

ANDERSEN
BEEDE
WEISENMILLER

ABW

8) The disallowance of any claim filed by SRC in this bankruptcy case pursuant to 11 U.S.C. §§ 502(d) and/or (j) until SRC returns such Avoided Transfer;

9) An award of prejudgment and post-judgment interest;

10) A preliminary and permanent injunction against South River Capital LLC and Nevada Trust Deed Services, LLC enjoining any further foreclosure activity against the Property; and

11) Such other and further relief as the Court deems just and proper.

Dated this 5th day of April, 2024.        Respectfully submitted by:

**ANDERSEN BEEDE WEISENMILLER**

By:    /s/ Michael N. Beede
       Ryan A. Andersen, Esq.
       Nevada Bar No. 12321
       Michael N. Beede, Esq.
       Nevada Bar No. 13068
       Valerie Y. Zaidenberg, Esq.
       Nevada Bar No. 15839
       3199 E Warm Springs Rd, Ste 400
       Las Vegas, Nevada 89120

*Counsel for Robert E. Atkinson, Trustee*

EXHIBIT 6

Exhibit 6



Honorable Natalie M. Cox
United States Bankruptcy Judge

Entered on Docket
September 30, 2024

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**ANDERSEN BEEDE WEISENMILLER**
Ryan A. Andersen, Esq.
Nevada Bar No. 12321
Email: *ryan@aandblaw.com*
3199 E Warm Springs Rd, Ste 400
Las Vegas, Nevada 89120
Phone: 702-522-1992
Fax:    702-825-2824

*Counsel for Robert Atkinson, Trustee*

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

In re:

ROBIN LINUS LEHNER and DONYA TINA
LEHNER,

                    Debtors.

Case No.: 22-14616-NMC
Chapter 7

**ORDER GRANTING MOTION
TO APPROVE SETTLEMENT
AGREEMENT PURSUANT TO
FRBP 9019**

Hearing Date:   September 26, 2024
Hearing Time:  9:30 a.m.

The Court having considered the *Motion to Approve Settlement Agreement Pursuant to FRBP 9019* ("Motion") at ECF No. 543; having conducted a hearing with respect to the Motion on September 26, 2024, at 9:30 a.m. Pacific time; with Ryan A. Andersen, Esq. of Andersen Beede Weisenmiller appearing on behalf of the Trustee and with other appearances as noted on the record of such hearing; and having stated its findings of fact and conclusions of law on the record at the conclusion of such hearing, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, made applicable to this

1  contested matter by Rule 9014 of the Federal Rules of Bankruptcy Procedure, such findings of facts

2  and conclusions of law therefore being incorporated as if set forth herein; and further, based upon the

3  record presented, the Court hereby **FINDS** as follows:

4        A.    The Trustee is authorized to enter into the Settlement Agreement[1] attached hereto as

5  **Exhibit A** and incorporated herein by this reference (the "Settlement Agreement") on behalf of the

6  estate and Westridge.

7        B.    The Letter is withdrawn and rescinded as of the date of the Settlement Agreement, and

8  the Loan Agreement, Note, and DOT are not void as a result of the Letter or any other act of the Trustee,

9  and all of SRC's rights thereunder are restored as they existed prior to the Letter.

10        C.    The Trustee and SRC have negotiated the Settlement Agreement at arm's length and

11  have entered into the Settlement Agreement in good faith pursuant to Nev. Rev. Stat. § 17.245.

12        **NOW THEREFORE**, good cause appearing, the Court **ORDERS** as follows:

13        **IT IS ORDERED** that the relief requested in the Motion is hereby **GRANTED** in all respects;

14        **IT IS FURTHER ORDERED** that the Settlement Agreement is **APPROVED**, and shall be

15  binding on the Parties according to its terms;

16        **IT IS FURTHER ORDERED** that the Parties are authorized to take any and all actions

17  required to effectuate the terms of the Settlement Agreement; and

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement.

1    **IT IS FURTHER ORDERED** that this Court retains continuing and exclusive jurisdiction to

2    the maximum possible extent to interpret, implement, and enforce this Order and all matters arising

3    from or related to its implementation.

4    **IT IS SO ORDERED**.

5                                                          Respectfully submitted by:

6                                                          **ANDERSEN BEEDE WEISENMILLER**

7                                                          By:      /s/ Ryan A. Andersen

8                                                                   Ryan A. Andersen, Esq.
                                                                    Nevada Bar No. 12321
9                                                                   3199 E Warm Springs Rd, Ste 400
                                                                    Las Vegas, Nevada 89120
10

11                                                         *Counsel for Robert E. Atkinson, Trustee*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# LR 9021 CERTIFICATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that:

☐    The court has waived the requirement set forth in LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☑    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

> Counsel appearing:    Christopher A. Jones, Esq., *Approved*
> Jason M. Wiley, Esq., *Waived Review*

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

<u>I declare under penalty of perjury that the foregoing is true and correct.</u>

Executed this 27th day of September 2024.

**ANDERSEN BEEDE WEISENMILLER**

By:    <u>/s/ Ryan A. Andersen</u>
        Ryan A. Andersen, Esq.
        Nevada Bar No. 12321
        3199 E Warm Springs Rd, Ste 400
        Las Vegas, Nevada 89120

*Counsel for Robert E. Atkinson, Trustee*

# # #

EXHIBIT A

EXHIBIT A

EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered into between Robert E. Atkinson (the "Trustee"), as Trustee of the bankruptcy estate (the "Estate") of Robin Linus Lehner and Donya Tina Lehner (the "Debtors"), Westridge Property Management LLC ("Westridge"), and South River Capital LLC ("SRC"). The Trustee, Westridge, and SRC are each a "Party" and collectively they are the "Parties."

### RECITALS

WHEREAS, on or about November 18, 2020, Westridge purchased that certain piece of real property located at 9501 Balatta Canyon Court, Las Vegas, Nevada 89144 (the "Property") by way of a Grant, Bargain, and Sale Deed recorded in Clark County land records as Instrument # 20201119-0001305; and

WHEREAS, on or about April 5, 2022, Westridge executed that certain Commercial Loan Agreement (the "Loan Agreement") between Westridge as borrower and SRC as lender, whereby SRC agreed to make a loan to Westridge in the original principal amount of $2,787,213.00 (the "Loan");

WHEREAS, Westridge's obligations under the Loan Agreement are evidenced by that certain Commercial Promissory Note (the "Note") and Deed of Trust Assignment of Rents, Security Agreement and Fixture Filing recorded in Clark County, Nevada as Instrument # 20220408-0001328 (the "DOT"); and

WHEREAS, in connection with the Loan, Mr. Robin Lehner ("Mr. Lehner") executed a Guaranty for the Note, whereby he promised to pay, unconditionally, all amounts due under the Note (the "Guaranty"); and

WHEREAS, on November 21, 2022, the Debtors paid $650,000 (the "Principal Payment") to SRC toward the balance due on the Note; and

WHEREAS, on December 30, 2022, the Debtors filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), thereby commencing Case No. 22-14616 (the "Bankruptcy Case"); and

WHEREAS, the Trustee was appointed chapter 7 trustee of the Debtors' Estate and continues to serve in that capacity; and

WHEREAS, based on the Guaranty, on March 4, 2023, SRC timely filed Proof of Claim No. 24-1 in the Bankruptcy Case as an unsecured claim in the amount of $2,503,859.09 for the amount due under the Note (the "Guaranty Claim"); and

WHEREAS, on or about July 5, 2023, the Trustee on behalf of Westridge sent a letter to SRC purporting to void the Note and DOT (the "Letter"); and

WHEREAS, on or about July 5, 2023, the Trustee commenced an adversary proceeding on behalf of the Debtors' Estate and Westridge, asserting claims against SRC (the "Adversary Proceeding"), including for declaratory relief concerning the Note and the DOT as well as for recovery of certain preferential or fraudulent transfers received by SRC from the Debtors; and

WHEREAS, SRC has asserted defenses and counterclaims in connection with the Adversary Proceeding; and

WHEREAS, the Parties have agreed to resolve the Adversary Proceeding;

WHEREAS, SRC asserts that the payoff for the Note is $3,134,226.02 as of May 29, 2024 (the "Payoff") and that the per diem on the Note is $1,009.13 (the "Per Diem"), exclusive of additional costs, attorney's fees, and late fees, which all continue to accrue under the Note; and

NOW THEREFORE, in consideration of the foregoing, the Parties intending to be legally bound by this Agreement agree as follows:

1.      Recitals Incorporated. The Recitals listed above are incorporated into and made a part of this Agreement.

2.      Loan not Void; Ratification of the Note and DOT. The Trustee on behalf of Westridge hereby withdraws and rescinds the Letter, stipulates that the Loan Agreement, Note and DOT are not void as a result of the Letter or any other act of the Trustee, and ratifies the Loan Agreement, Note and DOT to restore all of SRC's rights thereunder as they existed prior to the Letter.

3.      Settlement Payments. SRC will make the following payments the ("Settlement Payments") to the Trustee for the benefit of the Estate:

        a. Four Hundred Thousand and 00/100 Dollars ($400,000) no later than fifteen (15) days after an order approving this Agreement has become final and non-appealable (the "Initial Payment"); and

        b. Thirty-Seven Thousand, Five Hundred and 00/100 Dollars ($37,500) within fifteen (15) days of occurrence of the earlier of the following but only if one of them occurs on or before November 30, 2024:

            i. The Debtors vacate the Property; or

            ii. SRC completes its foreclosure sale of the Property.

4.      Nature of Settlement Payments. The Settlement Payments constitute a return of principal payments made by the Debtors on the Note. At its option, SRC may add this amount to the principal of the Note and may charge interest on these amounts as may be appropriate under the Note.

5.      Foreclosure. Fifteen (15) days after an order approving this Agreement has become final and non-appealable, SRC may initiate foreclosure proceedings with respect to the Property. The Trustee does not dispute the Payoff or the Per Diem and waives the right to dispute any



updated Payoff at the foreclosure sale or otherwise. Furthermore, the Trustee shall not oppose, and shall reasonably cooperate with SRC in connection with, the foreclosure of the Property, including but not limited to waiving notice and any other procedural requirements as reasonably requested by SRC, and executing such documents as may be reasonably required. Such cooperation further includes but is not limited to:

        a.   The Trustee hereby agrees not to transfer, abandon, or otherwise dispose of the Estate's 100% membership interest in Westridge prior to the closing of any foreclosure sale of the Property; and

        b.   The Trustee hereby agrees that he will not initiate any bankruptcy case on behalf of Westridge and will not cooperate with any involuntary bankruptcy filing by any creditors of Westridge, except to the extent required by law or court order should such an involuntary proceeding be initiated by a third party without the assistance of the Trustee;

    6.    Inspection of the Property and Insurance. The Trustee and Westridge shall make arrangements for SRC to have access to the Property within ten (10) days of the date of this Agreement so that SRC can inspect the Property and obtain insurance on the Property which will be paid for by SRC. The Trustee and Westridge will reasonably cooperate with SRC to obtain insurance for the Property including executing such documents as may be reasonably required.

    7.    Unlawful Detainer. The Trustee will undertake those reasonable efforts which may be necessary to cause Debtors to vacate the Property on or before November 30, 2024. The Trustee may satisfy his obligations under this Paragraph 7 by causing the Debtors to vacate the Property voluntarily or by agreement. Upon the Debtors' vacation of the Property, the Trustee shall use reasonable efforts to secure the Property, including without limitation causing the locks to be changed and revoking access to the Property guard gate. In the event the Debtors have not vacated the Property voluntarily or by agreement by the latter of September 1, 2024 or that date upon which an Order granting the Settlement Motion becomes unappealable, the Trustee shall cause Westridge to initiate and diligently pursue an action for unlawful detainer (including any noticing or other prerequisites thereto) against the Debtors (an "Unlawful Detainer Action"), *provided that* nothing herein shall preclude the Trustee, in his reasonable discretion, from causing Westridge to commence an Unlawful Detainer Action prior to September 1, 2024.

    8.    Mutual Release. Except for the enforcement of the terms and provisions of this Agreement, upon approval of this Agreement, each of the Parties, on its own behalf and on behalf of its agents, successors, predecessors, assigns, subsidiary companies, parent companies, affiliates, trustees, beneficiaries, attorneys, insurers, trusts, including but not limited to grantor trusts, trustees, receivers, representatives and all other persons, parties, or entities affiliated with, associated with, or in any way representative of the Parties (and in the case of the Trustee, on behalf of the Estate and its creditors), releases and forever discharges the other Party and its agents, successors, predecessors, assigns, subsidiary companies, parent companies, affiliates, trustees, beneficiaries, attorneys, insurers, trusts, including but not limited to grantor trusts, trustees, receivers, representatives and all other persons, parties, or entities affiliated with, associated with, or in any way representative of the other Party, of and from any and all loss, costs, claims, actions, lawsuits, administrative claims, arbitration claims, causes of action, demands, damages, or expenses of any type whatsoever, in law or in equity, imposed by contract, statute, common law



or otherwise, whether or not known now, anticipated, unanticipated, suspected or claimed, fixed or contingent, direct or indirect, liquidated or unliquidated, accrued or unaccrued, irrespective of legal theory and whether damage has resulted from such or not, arising from or in any way related to the Property, and the Loan, and the Adversary Proceeding. The foregoing release includes the waiver by the Trustee and Westridge of any right, claim, or cause of action to seek substantive consolidation, piercing the veil, or any other remedy to consolidate the Debtors' Estate with Westridge, and any defenses to the enforcement of the Loan Agreement, Note, and/or DOT. The foregoing release also includes the waiver by SRC of its right to seek from the Estate or any other party any amounts due and payable by the Debtors for living in the Property, and also a waiver of the Guaranty Claim. Notwithstanding anything else herein, the Debtors are not receiving a release under this Paragraph or by this Agreement. For the avoidance of doubt, and irrespective of the foregoing releases, neither the Trustee nor the Debtors' Estate are releasing and specifically reserve all rights against Sure Sports LLC and any lender, loan broker, or any other party who made or was involved with any loan concerning the Property except for SRC.

     9.    Covenant not to Sue. The Parties hereby agree not to commence or prosecute any lawsuit or other legal claim or charge against any of the other Parties under this Agreement, other than to enforce a Party's rights under this Agreement. SRC agrees not to object to any motion to approve a settlement between the Trustee and Debtors brought under Federal Rule of Bankruptcy Procedure 9019 unless such settlement is materially inconsistent with any of the terms of this Agreement.

     10.    Withdrawal of Proof of Claim. SRC shall file with the Bankruptcy Court a withdrawal of the Guaranty Claim no later than fifteen (15) days after an order approving this Agreement has become final and non-appealable.

     11.    Adversary Proceeding. The Parties hereby agree that all matters in the Adversary Proceeding relating to the Trustee's and/or Westridge's claims against SRC and Nevada Trust Deed Services LLC, but not any other defendant, are stayed until the date that is twenty (20) days after an order approving this Agreement has become final and non-appealable. The Parties will submit to the Bankruptcy Court a pleading reasonably required to dismiss the Adversary Proceeding with prejudice as to SRC and Nevada Trust Deed Services LLC no later than fifteen (15) days after an order approving this Agreement has become final and non-appealable.

     12.    Warranties and Representations. Each of the Parties warrants and represents that:

     a.    it has not heretofore assigned, subrogated, or transferred or purported to assign, subrogate, or transfer, to any person, firm, partnership, corporation or entity whatsoever any action(s) or cause(s) of action at law or in equity, suits, debts, demands, claims, contracts, covenants, liens, liabilities, losses, costs, accounts, expenses (including, without limitation attorneys' fees), or damages released in this Agreement; and

     b.    it has full power and authority to execute and perform its obligations under this Agreement in all respects and the Trustee represents that he has full power and authority to enter into this Agreement on behalf of Westridge; and



c. it has not relied upon the advice of any representative, agent or attorney of any of the other Parties, as to the legal or other consequences which attach from the assent to the terms of this Agreement.

13.     Court Approval. The Parties understand that this Agreement is subject to approval by the Bankruptcy Court.     Accordingly, the Trustee shall file an appropriate motion seeking approval of this Agreement within fourteen (14) days the date of this Settlement Agreement (the "Settlement Motion"), which motion shall be subject to the prior approval of SRC in its reasonable discretion. The form of order approving this Agreement shall substantially conform to the order attached hereto as Exhibit A. In the event the Bankruptcy Court declines to issue an Order approving this Agreement, or in the event any reviewing court reverses the entry of an Order approving this Agreement without remand, this Agreement shall be null and void.

14.     Confidentiality. The Parties expressly acknowledge and agree that all the terms and provisions of this Agreement ("Confidential Information") are strictly confidential and shall not be disclosed to any person for any reason, except as follows:

a. Subject only to the limited exceptions in Paragraphs 13(b) and 13(c) below, the Parties, their employees, successors, assigns, agents, and attorneys shall not disclose, discuss, or otherwise communicate in any fashion any Confidential Information to any person who is not a Party to this Agreement.

b. The Parties shall be permitted to disclose, discuss, or otherwise communicate Confidential Information as reasonably required to obtain Court approval of this Agreement, including by filing a copy of this Agreement on the Court's docket, and as may be required to be disclosed by the Trustee to the Office of the United States Trustee in connection with its statutory oversight functions.

c. The Parties shall be permitted to disclose, discuss, or otherwise communicate Confidential Information to any person or persons not a party to this Agreement who are informed of the confidential nature of the information herein and who have a specific need to know the Confidential Information for reporting purposes under Federal or State tax laws, or in order to provide legal, tax or other financial advice to the Parties (such non-parties are hereinafter referred to as "Professionals" or a "Professional").     Prior to the disclosure of any Confidential Information to any Professional, the Parties shall attempt to obtain a written agreement from such non-parties to abide by this Confidentiality provision. If such a written agreement is not obtained, then the Parties shall only disclose those portions of this Agreement that are required by such Professional and that are necessary to the purpose for which it has been disclosed.  The Parties agree to use reasonable efforts to maintain the strict confidentiality of all Confidential Information.

d. Upon inquiry by any third-person or entity not covered by this Paragraph 13 as to the status of the Adversary Proceeding or the terms and provisions of settlement or this Agreement, the Parties shall respond merely that the



Adversary Proceeding was "resolved by mutual agreement". No other words, in form or substance, shall be used or published by any Party.

15.     Final Disposition. This Agreement is acknowledged to be a final and binding disposition of any and all claims by the Parties arising from or in any way related to the Loan, including but not limited to any and all claims, causes of action, or other rights that were or could have been asserted in the Adversary Proceeding.

16.     No Admission of Liability. Neither the negotiations preliminary to the signing of this Agreement nor its acceptance shall be considered as an admission of wrongdoing or liability by any party hereto.

17.     Waiver of Construction Against Drafter. The Parties agree that this Agreement has been negotiated at arm's length among persons knowledgeable about the matters dealt with herein, and each Party participated in its drafting. Accordingly, any rule of law or other statute, legal decision, or common law principle which would require the interpretation of any ambiguities in this Agreement against the Party that drafted it is of no application and is expressly waived. The provisions of this Agreement shall be interpreted in a reasonable manner to effectuate the intentions of the Parties. Notwithstanding the foregoing, if any part of this Agreement is held by a court of competent jurisdiction to be illegal or contrary to public policy or otherwise unenforceable, such invalid part shall be deemed modified or eliminated to the extent necessary to make the remaining part enforceable.

18.     Costs and Fees. The Parties agree to pay their own costs and attorneys' fees associated with the disputes described in this Agreement.

19.     Good Faith. This Agreement has been negotiated at arm's length and is entered into in good faith pursuant to Nev. Rev. Stat. § 17.245.

20.     Choice of Law. The Parties hereto agree that the terms of this Agreement shall be interpreted and construed pursuant to the internal laws of the State of Nevada without regard to choice of law.

21.     Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Facsimile, PDF, or copied signatures shall be as effective as original signatures.

22.     Entire Agreement. This Agreement is the complete, final, and exclusive agreement between and among the Parties with respect to the subject matter hereof, and supersedes any and all prior agreements, negotiations, and understandings, whether written or oral. The Parties acknowledge and agree that no promises, agreements, statements, or representations not expressed in this Agreement have been made or are being relied upon by any party to this Agreement. This Agreement may not be amended, supplemented, modified, or waived, in whole or in part, except by a written instrument signed by all of the parties hereto.

[SIGNATURES ON FOLLOWING PAGE]



IN WITNESS WHEREOF, the Parties have executed this document on the dates set forth below:

ROBERT E. ATKINSON, IN HIS CAPACITY AS CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF ROBIN LINUS LEHNER AND DONYA TINA LEHNER

By: _____        Date: __8/19/24__

WESTRIDGE PROPERTY MANAGEMENT LLC

By: _____        Date: __8/19/24__

Name: __ROBERT ATKINSON__

Title: __TRUSTEE__

SOUTH RIVER CAPITAL LLC

By:_____        Date: _____

Name:_____

Title:_____

Page 7 of 7

IN WITNESS WHEREOF, the Parties have executed this document on the dates set forth below:

ROBERT E. ATKINSON, IN HIS CAPACITY AS CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF ROBIN LINUS LEHNER AND DONYA TINA LEHNER

By:_____    Date: _____

WESTRIDGE PROPERTY MANAGEMENT LLC

By:_____    Date: _____

Name:_____

Title:_____

SOUTH RIVER CAPITAL LLC

By:_____    Date: _8-9-24_____

Name:_James Plodl_____

Title:____CEO_____

## Exhibit A

1

2

3

4

5

6

7  **ANDERSEN BEEDE WEISENMILLER**
Ryan A. Andersen, Esq.
Nevada Bar No. 12321
8  Email: *ryan@aandblaw.com*
3199 E Warm Springs Rd, Ste 400
9  Las Vegas, Nevada 89120
Phone: 702-522-1992
10  Fax:    702-825-2824

11
*Counsel for Robert Atkinson, Trustee*
12

13                    **UNITED STATES BANKRUPTCY COURT**

14                              **DISTRICT OF NEVADA**

15  | In re: | Case No.: 22-14616-NMC |
|---|---|

16  ROBIN LINUS LEHNER and DONYA TINA
LEHNER,

17                                              **PROPOSED ORDER GRANTING**
**MOTION TO APPROVE**
18                                              **SETTLEMENT AGREEMENT**
            Debtors.                            **PURSUANT TO FRBP 9019**
19

20                                              Hearing Date:
                                                Hearing Time:

21          The Court having considered the *Motion to Approve Settlement Agreement Pursuant to FRBP*

22  *9019* ("Motion") at ECF No. ____; having conducted a hearing with respect to the Motion on August

23  ____, 2024, at _:____ _.m. Pacific time; with Ryan A. Andersen, Esq. of Andersen Beede Weisenmiller,

24  appearing on behalf of the Trustee and with other appearances as noted on the record of such hearing;

25  and having stated its findings of fact and conclusions of law on the record at the conclusion of such

26  hearing, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, made applicable to this

27  contested matter by Rule 9014 of the Federal Rules of Bankruptcy Procedure, such findings of facts



In re:

Case No.: 22-14616-NMC
Chapter 7

1 and conclusions of law therefore being incorporated as if set forth herein; and further, based upon the

2 record presented, the Court hereby **FINDS** as follows:

3      A.     The Trustee is authorized to enter into the Settlement Agreement[1] attached hereto as

4 **Exhibit A** and incorporated herein by this reference (the "Settlement Agreement") on behalf of the

5 estate and Westridge.

6      B.     The Letter is withdrawn and rescinded as of the date of the Settlement Agreement, and

7 the Loan Agreement, Note, and DOT are not void as a result of the Letter or any other act of the Trustee,

8 and all of SRC's rights thereunder are restored as they existed prior to the Letter.

9      C.     The Trustee and SRC have negotiated the Settlement Agreement at arm's length and

10 have entered into the Settlement Agreement in good faith pursuant to Nev. Rev. Stat. § 17.245.

11      **NOW THEREFORE**, good cause appearing, the Court **ORDERS** as follows:

12      **IT IS ORDERED** that the relief requested in the Motion is hereby **GRANTED** in all respects;

13      **IT IS FURTHER ORDERED** that the Settlement Agreement is **APPROVED**, and shall be

14 binding on the Parties according to its terms;

15      **IT IS FURTHER ORDERED** that the Parties are authorized to take any and all actions

16 required to effectuate the terms of the Settlement Agreement; and

17      **IT IS FURTHER ORDERED** that this Court retains continuing and exclusive jurisdiction to

18 the maximum possible extent to interpret, implement, and enforce this Order and all matters arising

19 from or related to its implementation.

20      **IT IS SO ORDERED**.

21                             Respectfully submitted by:

22                             **ANDERSEN BEEDE WEISENMILLER**

23                             By:     /s/ Ryan A. Andersen
                                     Ryan A. Andersen, Esq.

24                                      Nevada Bar No. 12321
                                     3199 E Warm Springs Rd, Ste 400

25                                      Las Vegas, Nevada 89120

26                             *Counsel for Robert E. Atkinson, Trustee*

27    [1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement.



## **LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that:

☐ The court has waived the requirement set forth in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

      Counsel appearing:

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __ day of August, 2024.

                             **ANDERSEN BEEDE WEISENMILLER**

                             By:    /s/
                                     Ryan A. Andersen, Esq.
                                     Nevada Bar No. 12321
                                     3199 E Warm Springs Rd, Ste 400
                                     Las Vegas, Nevada 89120

                             *Counsel for Robert E. Atkinson, Trustee*

                                 # # #



1

<u>CERTIFICATE OF SERVICE</u>

2

    **1.**  **On January 8, 2025, I served the following document(s) listed below:**

3

SOUTH RIVER CAPITAL LLC'S NOTICE OF REMOVAL

4

    **2.**  **I served the above-named document(s) by the following means to the persons as listed below:**

5

6

    ☒ **a. ECF System (You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)**

7

8
RYAN A. ANDERSEN ryan@aandblaw.com, melissa@aandblaw.com;ecf-df8b00a4597e@ecf.pacerpro.com
ROBERT E. ATKINSON Robert@ch7.vegas, TrusteeECF@ch7.vegas;ecf.alert+atkinson@titlexi.com

9
MICHAEL N. BEEDE mike@abwfirm.com, eservice@legallv.com
LOUIS M BUBALA lbubala@kcnvlaw.com, cdroessler@kcnvlaw.com;kmilks@kcnvlaw.com
TIMOTHY S. CORY tcory@crdslaw.com, creade@crdslaw.com

10
JOSHUA S. DRESSLOVE jdresslove@dresslovelaw.com, dresslove.joshuar105288@notify.bestcase.com
SCOTT D. FLEMING scott@fleminglawlv.com

11
JEFF GARRETT jeff@abwfirm.com
TALITHA B. GRAY KOZLOWSKI tgray@gtg.legal, bknotices@gtg.legal

12
STEVEN T GUBNER sgubner@bg.law, ecf@bg.law
AUGUST B. HOTCHKIN august@nvlawyers.com

13
MATTHEW L. JOHNSON mjohnson@mjohnsonlaw.com, annabelle@mjohnsonlaw.com;
jennifer@mjohnsonlaw.com; admin@mjohnsonlaw.com

14
ROBERT R. KINAS rkinas@swlaw.com, mfull@swlaw.com;docket_las@swlaw.com;
sdugan@swlaw.com;jfung@swlaw.com

15
BART K. LARSEN BLARSEN@SHEA.LAW, 3542839420@filings.docketbird.com
ZACHARIAH LARSON zlarson@lzlawnv.com, hannah@lzlawnv.com;Jennifer@lzlawnv.com;

16
bchambliss@lzlawnv.com;trish@lzlawnv.com;carey@lzlawnv.com;mzirzow@lzlawnv.com
EDWARD M. MCDONALD edward.m.mcdonald@usdoj.gov

17
DAVID MINCIN dmincin@mincinlaw.com, cburke@mincinlaw.com
WILLIAM M. NOALL wnoall@gtg.legal, bknotices@gtg.legal

18
TERESA M. PILATOWICZ tpilatowicz@gtg.legal, bknotices@gtg.legal
ROBERT CHRISTOPHER READE Creade@crdslaw.com,

19
cweber@crdslaw.com;jshafer@crdslaw.com;mrodriguez@crdslaw.com;adavid@crdslaw.com;kkeyes@crdsl
aw.com

20
ELIZABETH E. STEPHENS estephens@fennemorelaw.com,
jhill@fennemorelaw.com;ejames@fennemorelaw.com;lgubba-

21
reiner@fennemorelaw.com;ldinkins@fennemorelaw.com;jdabbieri@fennemorelaw.com;stephens@ecf.court
drive.com;chawkins@fennemorelaw.com;bkstaff@sullivanhill.com

22
Jeffrey R. Sylvester jeff@sylvesterpolednak.com, kellye@sylvesterpolednak.com
U.S. TRUSTEE - LV - 7 USTPRegion17.LV.ECF@usdoj.gov

23
MARK M. WEISENMILLER mark@abwfirm.com, mark-weisenmiller-
1991@ecf.pacerpro.com;weisenmiller.markm.b117998@notify.bestcase.com;melissa@abwfirm.com

24
JASON M. WILEY jwiley@wileypetersenlaw.com, cpascal@wileypetersenlaw.com
MATTHEW C. ZIRZOW mzirzow@lzlawnv.com,

25
hannah@lzlawnv.com;carey@lzlawnv.com;trish@lzlawnv.com;jennifer@lzlawnv.com;bchambliss@lzlawnv.c
om

26

27

28

☒ b. United States mail, postage fully prepaid (List persons and addresses.)

<u>Attorney for Plaintiff, Poshbaby LLC</u>
Allison R. Schmidt
Nevada's Lawyers
7250 S. Durango Dr. Suite 130-A295
Las Vegas, NV 89113

☐ c. Personal Service (List persons and addresses.)
I personally delivered the document(s) to the persons at these addresses:

☐ d. By direct email (as opposed to through the ECF System)
(List persons and email addresses.)
I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ e. By fax transmission (List persons and fax numbers.)
I faxed the document(s) to the persons at the fax numbers listed below.  No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐ f. By messenger (List persons and addresses.)
I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service. (A declaration by the messenger must be attached to this Certificate of Service).

I declare under penalty of perjury that the foregoing is true and correct.


Signed on:  January 8, 2025                    /s/ Jennifer Warner
                                               JENNIFER WARNER